IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL ACTION FILE |
| v. | NO. 4:11-CR-0044-RLV-WEJ |
| BRADLEY MILLER, | |
| Defendant. | |

## **REPORT AND RECOMMENDATION**

This matter is before the Court on defendant Bradley Miller's Motion to Suppress Evidence [15] and Supplemental Motion to Suppress Evidence [22]. He requests an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978),[1] regarding an October 5, 2009 search warrant [16] and seeks to have the fruits of the resulting search suppressed. (Mot. Suppress 17.) Mr. Miller argues that the underlying warrant affidavit omitted material facts affecting the credibility of the confidential informant ("CI") whose information formed the basis of a finding of

---

[1] In Franks, the Supreme Court held that, where a defendant makes a substantial preliminary showing that an affidavit for a search warrant includes a false statement made intentionally or recklessly which was necessary to a finding of probable cause, the defendant is entitled to a hearing to determine whether evidence seized pursuant to the warrant is admissible. 438 U.S. at 171-72.

probable cause to issue the warrant, and that the warrant was based on stale information. (Id. at 8-17; Suppl. Mot. 1-4.)

On February 2, 2012, the undersigned held a hearing [19] regarding the instant Motion and defendant's now withdrawn request to suppress statements [14, 21]. (See Feb. 2, 2009 Hr'g Tr. [20].) For the reasons set forth below, the undersigned **REPORTS** that the warrant was supported by sufficient probable cause and that Mr. Miller has not made the necessary substantial preliminary showing to entitle him to a Franks hearing. Accordingly, the undersigned **RECOMMENDS** that defendant's Motion to Suppress [15] as supplemented [22] be **DENIED**.

## I. DISCUSSION

On October 5, 2009, Polk County Task Force Agent ("TFA") Mark Mayton applied for a search warrant for defendant's residence and its outbuildings. (Mot. Suppress Attach. A [16].) Polk County Superior Court Judge Richard C. Sutton granted the search warrant based on TFA Mayton's accompanying affidavit, which included information obtained from a CI. (See id.) Mr. Miller argues that he is entitled to a Franks hearing, asserting that TSA Mayton omitted the following material information from the affidavit: the CI was under investigation for related criminal behavior (selling and altering Vehicle Identification Numbers ("VINs") on

2

stolen cars), likely would face similar charges, and could benefit from cooperating with law enforcement; the CI previously owned one of the cars from which a VIN was taken and allegedly transferred to a stolen vehicle by defendant; while working with the police, the CI owned an expensive home and a small business, both of which would have been in jeopardy if he was charged with a crime; and that the CI may have provided law enforcement officers with false information in the past. (Mot. Suppress 10-14; Suppl. Mot. 1-2.) Additionally, defendant argues that the affidavit was based on stale information; thus, the warrant lacked probable cause and the evidence seized during the search must be suppressed. (Mot. Suppress 15-17.) The Court addresses Mr. Miller's arguments in turn below.

### A. Defendant Is Not Entitled To A Franks Hearing

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam). Where an affidavit in support of a warrant application includes statements from a CI to establish probable cause, factors used to assess the source's usefulness include his veracity and the basis of his knowledge. Id. at 1352-53. A deficiency in one of those factors may be

3

compensated for by a strong showing as to the other, e.g., a good basis of knowledge may make up for any weaknesses in veracity. Illinois v. Gates, 462 U.S. 213, 233 (1983) (An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the CI's] tip to greater weight than might otherwise be the case.").

To be entitled to an evidentiary hearing under Franks, a defendant must make a "substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to a finding of probable cause." Franks, 438 U.S. at 171; see also id. ("There is . . . a presumption of validity with respect to the affidavit supporting the search warrant."). In United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009), the Eleventh Circuit set forth the following process to determine whether a defendant has met that burden:

> When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading. [E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. Looking only at the remaining portions of the affidavit, the court will then determine whether including the

4

AO 72A
(Rev.8/82)

> omitted facts would have prevented a finding of probable cause. The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking. [I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

Id. at 1309 (internal citations and quotation marks omitted).

The affidavit here both establishes the CI's usefulness and veracity and shows that there was a fair probability that fruits and instrumentalities of a crime would be found at Mr. Miller's residence. The affidavit stated that the CI had previously provided information in a related investigation which led to the arrest of three law enforcement officials and the recovery of stolen vehicles and equipment, a rifle, and suspected hydrocodone pills. (Mot. Suppress Attach. A.) The affidavit recited the CI's statements that he had seen stolen vehicles at Mr. Miller's residence and had seen him driving those vehicles. (Id.) TSA Mayton explained that the CI knew those vehicles to be stolen because Mr. Miller had asked the CI to obtain a legitimate VIN for at least one of the vehicles and the CI was tangentially involved in obtaining a VIN for another. (Id.) Additionally, the affidavit included the CI's admission that he had been providing defendant with VINs for stolen vehicles for the past eight years. (Id.) The affidavit also recounted the CI's statement that Mr. Miller had

5

shown him a box of counterfeit money he printed and, anticipating a search of his residence, asked the CI to hold the money for him. (Id.)

With regard to the allegedly omitted material facts, Mr. Miller contends that TSA Mayton failed to inform Judge Sutton of the following: the CI had engaged in similar criminal conduct for 10 years, he did so with a person already convicted in a related case, the CI had been investigated (including a search of his home) for similar crimes in 2008 but had not yet been charged, the CI previously owned one of the cars from which defendant obtained a VIN, the CI was in jeopardy of losing his home and business, and police had assured the CI that they would attest to his cooperation. (See Mot. Suppress 11-12; Suppl. Mot. 2.)

TSA Mayton's affidavit included the CI's admission that he was involved in the criminal conduct under investigation and had been for at least eight years. Thus, defendant's assertion that the CI's criminal history extended an additional two years is immaterial. Likewise, as the CI admitted to providing Mr. Miller with VINs, the fact that one of those VINs came from a vehicle the CI previously owned is irrelevant. Moreover, inclusion of the CI's admissions in the affidavit alerted Judge Sutton that the CI could face similar charges and likely was aiding law enforcement in hopes of more lenient treatment if prosecuted and in an attempt to protect himself

6

and his assets. Whether the CI faced charges while cooperating with law enforcement, or might be charged in the future, and the fact that officials searched his home in 2008 does not change the probable cause determination. Rather, under the circumstances, the CI's admission that he was involved in the criminal activity enhanced the likelihood that the information he provided would be useful because it was detailed and based on first-hand knowledge. See Gates, 462 U.S. at 234 (explaining that detailed, first-hand description entitles a CI's tip to greater weight); Brundidge, 170 F.3d at 1353 (finding that "the level of detail meant that the CI was unlikely to lie, because 'if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly'") (citation omitted). Thus, including the additional facts alleged by defendant in the warrant application would not have prevented a finding of probable cause under the totality of the circumstances.

Second, the defendant challenges the CI's veracity based on the following statement set forth in the warrant application: "To the Affiant's knowledge, the [CI] has never provided information that was proven to be intentionally false. Due to the above information, the Affiant attests to the fact that the [CI] is a reliable source of information." (Mot. Suppress Attach. A.) According to Mr. Miller, the above

7

statement implies that the CI had provided officials with inaccurate information in the past; thus, TSA Mayton was required to elaborate on those instances in order for Judge Sutton to make a reliability determination. (Mot. Suppress 12-13.) The Government responds that Mr. Miller misreads the statement, which indicates that the CI had never provided officials with false information. (Gov't Resp. [18] 8.)

The undersigned agrees that defendant incorrectly interprets TSA Mayton's statement. The statement at issue immediately followed TSA Mayton's recitation of useful information the CI had provided in a related investigation, which led to multiple arrests and the recovery of stolen vehicles, an illegally possessed firearm, and narcotics. (See Mot. Suppress Attach. A.) Taken in context, the above statement clearly indicates that past information provided by the CI was accurate and useful (as opposed to false) and that, as a result, TSA Mayton considered the CI to be reliable. Thus, read in context with the entire affidavit, TSA Mayton's statement does not indicate that he omitted relevant facts regarding the CI's reliability and veracity which would have prevented a finding of probable cause.

For the reasons set forth above, considering of the totality of circumstances surrounding the facts contained in the search warrant affidavit, it is clear that the affidavit included sufficient facts to establish both the informant's veracity and that

8

AO 72A
(Rev.8/82)

the information provided by the informant was based on first-hand observation such that, if the omitted facts had been included in the affidavit, it would have still established probable cause for the search. Accordingly, defendant has failed to make the substantial preliminary showing necessary to warrant a Franks hearing.

### B. The Warrant Was Not Based On Stale Information

"[I]nformation supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000). "Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). However, where an affidavit does contain stale information, the government may overcome the flaw by updating, substantiating, or corroborating the stale facts. See id. at 450-51 (explaining that the updated information in the affidavit "supported the reasonable inference that criminal activity was continuing"). Moreover, "[w]hen the alleged criminal activity is ongoing, . . . it is unlikely that the passage of time will dissipate probable cause." United States v. Hooshmand, 931 F.2d 725, 735 (11th Cir. 1991).

9

When reviewing staleness challenges, the Eleventh Circuit has directed that courts should not "apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate[;] rather, [they] review each case based on the unique facts presented." Harris, 20 F.3d at 450. In this case-by-case determination, a court may consider "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id.; see also United States v. Haimowitz, 706 F.2d 1549, 1555 (11th Cir. 1983) ("In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime.") (internal quotations and citation omitted).

In Lamb v. United States, 945 F. Supp. 441 (N.D.N.Y. 1996), the court made the following relevant observations:

> The doctrine of staleness applies when information proffered in support of a warrant application is so old that it casts doubt on whether the fruits or evidence of a crime will still be found at a particular location. When determining whether information is stale or not, the judicial officer must not only consider the age of the information, but the nature of the evidence sought. Some kinds of evidence are more evanescent than others. Some contraband, like narcotic drugs, are consumable. Other evidence, like an illegal firearm, is more apt to remain in one place for extended periods. As one court put it, "[t]he hare and the tortoise do not disappear at the same rate of speed."

Id. at 459-60 (alteration in original).

Mr. Miller contends that the most recent event cited in TSA Mayton's affidavit occurred five months prior to the date the warrant issued; thus, the affidavit contained stale information which failed to establish that evidence of a crime would likely be found at his residence on October 5, 2009. (Mot. Suppress 15-17; Suppl. Mot. 3.) The Government argues that the information in the warrant application is not stale given the ongoing nature of the alleged criminal activity (operating a "chop shop"). (Gov't Suppl. Resp. [23] 6.) The Government contends that the affidavit set forth information detailing continuous criminal activity over a thirteen-month period, which was updated by TSA Mayton's statement that the CI observed one of the allegedly stolen vehicles at the residence one week prior to the date the warrant issued. (Id. at 6-8.)

Here, the affidavit recounted, inter alia, an on-going chop shop enterprise run by Mr. Miller out of his residence. (See Mot. Suppress Attach A.) The continuous nature of the alleged crime is confirmed by repeated interviews with the CI between August 13, 2008, and May 12, 2009, in which the CI described the vehicles allegedly stolen and detailed his involvement in providing defendant with VINs. (Id.) In the affidavit, TSA Mayton averred that he was able to corroborate the CI's information

11

regarding at least three allegedly stolen vehicles by matching it to automobiles registered to either the CI or Mr. Miller in the state's Vehicle, Title, and Tag Information Database. (Id.) Additionally, the affidavit further corroborated the information with TFA Kiki Campbell's statement that she had seen one of the allegedly stolen vehicles at defendant's house "on numerous occasions." (Id.) Finally, TSA Mayton updated older information, with the CI's statement that he had seen one of the vehicles at defendant's residence on September 29, 2009 (one week prior to the warrant application). (Id.)

Given the ongoing nature of a chop shop, which requires specialized equipment and involves nonconsumable items (vehicles) that are likely to remain in one place for extended periods, the information in the affidavit was not stale when the warrant issued. See United States v. Cruz-Lopez, No. 3:11-CR-10-S, 2011 WL 5389013, at *10-11 (W.D. Ky. July 8, 2011) (finding information spanning weeks, months, and years prior to a warrant application to search a chop shop was not stale due in part to the nature of such an operation). The affidavit detailed Mr. Miller's chop-shop activities over a thirteen-month period, including storing allegedly stolen vehicles at his residence, requesting "clean" VINs from the CI, and registering at least one of those vehicles with the state. (See Mot. Suppress Attach. A.) Moreover,

AO 72A
(Rev.8/82)

TSA Mayton corroborated the CI's information by comparing it with information in a state database and TSA Campbell's personal observations, and updated the affidavit with first-hand information gathered by the CI one week prior to the warrant application. Therefore, under the totality of the circumstances, the corroborated and updated information in the affidavit provided probable cause that evidence of an illegal chop shop operation and stolen vehicles would be found at Mr. Miller's residence on the date the warrant issued.[2]

## II.   CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Evidence [15] and Supplemental Motion to Suppress Evidence [22] be **DENIED**.

**SO RECOMMENDED**, this 26th day of March, 2012.

*(signature)*
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[2] Because the warrant is valid, the Court need not address the parties' arguments as to whether the good-faith exception to the exclusionary rule applies. See United States v. Leon, 468 U.S. 897, 922 (1984) (concluding that, where officers objectively reasonably relied on an invalid search warrant, there is little to no benefit in suppressing the evidence obtained).

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRADLEY MILLER,<br><br>Defendant. | CRIMINAL ACTION FILE<br><br>NO. 4:11-CR-0044-RLV-WEJ |

## ORDER FOR SERVICE OF
## NON-FINAL REPORT AND RECOMMENDATION

Attached is the Non-Final Report and Recommendation ("R&R") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. CrR. 58.1(A)(3)(a), (b). Let the same be filed and a copy of the R&R, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the R&R within **FOURTEEN (14) DAYS** of service of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. See United States v. Gaddy, 894 F.2d 1307, 1315 (11th Cir. 1990). The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.

Failure to object in accordance with this rule waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced FOURTEEN (14) DAYS allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge. 18 U.S.C. § 3161(h)(1)(D), (H); <u>Henderson v. United States</u>, 476 U.S. 321, 331 (1986); <u>United States v. Mers</u>, 701 F.2d 1321, 1337 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 26th day of March, 2012.

_/s/ Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)